JgSHORTESS, C.J.
James H. Manning (Manning) was employed by the State of Louisiana, Department of Wildlife and Fisheries (Department), and had gained permanent status in the classified civil service as Biologist Assistant Division Administrator. As one of his duties, Manning was responsible for drafting rules and regulations for the state’s wildlife management areas and refuges. In 1996, Manning was responsible for drafting rules and regulations for Timken Wildlife Management Area and Waddill Wildlife Refuge.
In a letter dated May 29, 1997, Manning received an unsatisfactory job performance rating for the April 1996 to March 1997 period from his supervisor, Johnnie Tarver (Tarver), Assistant Secretary of the Department. The letter stated that Manning was “insubordinate and intentionally altered the Notice of Intent for the Wa[d]dill Wildlife Refuge, which alteration was known by [Mitchell] to be in direct contravention of the goals and objectives of this administration.” The letter also alleged that Manning was seen drinking beer at the Waddill Wildlife Refuge and offering beer to another on-duty officer. Manning requested an internal appeal of the unsatisfactory rating to the Deputy Secretary, who found: “The evidence presented to me was sufficient to support [Tarver’s] action in issuing an unsatisfactory service rating...."
In a letter dated August 28, 1997, Manning was informed that he was being dismissed from his position effective the close of business that day. The letter stated that Manning failed to “properly prepare the rules for Waddill Wildlife Refuge to prohibit liquor consumption, in contradiction to instructions from James H. Jenkins, Jr., Secretary [of the Department] which had been explicitly conveyed to [Mitchell], by me.” [1] The letter also referred to Manning drinking beer at the Waddill Wildlife Refuge. It went on to state:
In this case not only did you fail to serve as a positive role model; more importantly you .were insubordinate in several ways. You acted in direct contravention to Secretary Jenkins’ directives regarding consumption of alcohol on Waddill Refuge. Secondly, you intentionally al *159 tered a document which was in keeping with the goals and objectives of this administration, thereby creating a serious impairment to the public service. Third, you intentionally prepared the proposed rule contrary to your specific instructions.
| sPursuant to the rules of the State Civil Service Commission (Commission), Manning filed petitions of appeal (which were ultimately consolidated) regarding his unsatisfactory rating and his dismissal. The Commission found: “Mr. Manning’s drinking beer on Waddill on May 1, 1997 does not constitute cause for disciplinary action” because Manning was not drinking while performing his official duties. The Commission went on to find:
The evidence does not support a finding that Mr. Manning was deliberately insubordinate or that he flagrantly disregarded authority. However, it does support what we consider akin to a lesser included offense — he neglected to ensure that the rules presented for final adoption complied with Mr. Tarver’s instructions. Neglecting to perform an assignment is a rational basis for assigning an employee an unsatisfactory rating; it is also cause for disciplinary action.
The Commission reversed Manning’s dismissal and ordered him demoted, effective August 28, 1997, to the highest available non-managerial job for which he was qualified, at the highest salary allowed under the rules. It also ruled Manning was entitled to back pay (based on the difference between his salary upon dismissal and his salary upon demotion) with interest.[2] Manning appeals.
The Commission found there were two versions of the creation of Waddill Wildlife Refuge’s rules and regulations regarding liquor consumption: (1) The Tarver version: Tarver testified he had a meeting with James H. Jenkins, Jr. (Jenkins), the Department’s Secretary, and was instructed there was to be an absolute prohibition against liquor consumption at Waddill, and the prohibition was to include the Department’s employees. Tarver stated that he conveyed this directive to Manning. (2) The Manning version: Manning contends this directive was never given to him. He alleges that he included a prohibition against liquor consumption by members of the public in the initially proposed rules (and the Notice of Intent[3]) on his own initiative, using another refuge’s rules as a guideline. Manning testified that he presented the proposed rules to Tarver, who approved them. Tarver agreed that he approved the proposed rules, but did not read that the prohibition against alcohol consumption was only for members of the public at the time he approved the Notice of Intent.
^Manning stated that after disseminating the proposed rules to his subordinates, Manuel Ruiz, Waddill’s supervisor, objected to the prohibition against alcohol consumption. Manning agreed with Ruiz’s objection. Susan Hawkins (Hawkins), Tarver’s secretary, sent Manning a copy of the Notice of Intent requesting any corrections. Manning returned the notice to Hawkins and on the cover wrote, “Looks good to me only one change,” and signed it “James.” In the section that stated which items were prohibited at Waddill, the word “liquor” had a line drawn through it, and Manning’s initials were next to the line, indicating this word was to be removed.
Hawkins testified that she placed this copy in a file and never gave it to Tarver. When the proposed rules went before the Wildlife and Fisheries Commission to be finally approved, she created a “clean” version with the word “liquor” deleted. Tar-ver stated that Manning presented the rules before the Wildlife and Fisheries Commission and did not mention the deletion of the word liquor. Therefore, the deletion went undetected and was not no *160 ticed until after the rules had been adopted by the Commission.
The Commission found:
Between these two unlikely' extremes lies a more plausible version. We believe that whaf probably occurred is that Mr. Tarver merely told Mr. Manning that Secretary Jenkins wanted a prohibition against liquor in the rules for Waddill. Period. Mr. Tarver may have intended to convey (and clearly believes that he did convey) that Secretary Jenkins wanted an absolute prohibition against liquor consumption at Waddill, even by DWF employees. But we believe that Mr. Tarver’s instructions did not come across that way. Mr. Manning did what he was instructed to do — initially. He drafted a rule that prohibited the public from bringing liquor on Wad-dill, which was consistent with the practice at Rockefeller and Marsh Island Wildlife Refuges. However, Mr. Manning neglected to follow through to ensure that the1 rule that was presented for final adoption continued to comply with Mr. Tarver’s instructions.
While Manning may have changed the language of the rule, after reviewing the record we find several facts showing that others were also responsible for the failure of the Waddill rules to prohibit alcohol consumption. First, when Manning initially drafted proposed rules and the Notice of Intent, only members of the public were prohibited from consuming alcohol. Tar-ver approved these proposed rules. ■ Tar-ver testified this particular rule was incorrect per the instructions given to him by the Secretary. Yet, he approved the proposed rules. Tarver stated he did not realize the proposed rules did not prohibit alcohol consumption by the Department’s employees as well, although he | ¿read them. Therefore, it appears Tarver assisted Manning in creating rules that were improper, according to Jenkins’s directive to Tarver.
• Second, when Manning made the correction to the Notice of Intent to strike the word liquor, Manning did not hide this change. Manning gave the change to Tar-ver’s secretary, and he signed the front of the Notice of Intent and signed his initials where the change was made. It was not Manning who failed to give this information to Tarver; it was Tarver’s secretary who did not forward the change. Manning did not deliberately keep this information from Tarver; it was not provided to him by his secretary.
Third, Hawkins testified that the only change made to the rules prior to the meeting with the Wildlife and Fisheries Commission was the deletion of the word “liquor.” She stated that all other changes were made during the meeting with the Wildlife and Fisheries Commission. In the copy designated as the “Rule” (indicating it is the final copy with the final changes made), two additional modifications were made to that same provision, which includes items prohibited at Waddill. In the same sentence where “liquor” had previously been prohibited, during the meeting with the Wildlife and Fisheries Commission, “division” was changed to “department” twice. Therefore, while Manning may not have brought to everyone’s attention the change he made to that provision during the meeting, this provision was obviously read during the meeting because another change was made. For whatever reason, no one noticed the exclusion of liquor, although the provision was modified.
Finally, prior to submission to the Louisiana Register of the final version of the rules, a copy, of the proposed rules with lines through the corrected portions was signed by Jenkins. In that version a line was placed through the word liquor, indicating it was to be deleted. Again, no one noticed that a change had been made to the provision, although the change was explicitly on the page.
' Based on these facts, we find that failure to have the provision written as initially desired by Jenkins was not totally because of Manning’s neglect to follow through to ensure that the rule presented for final adoption continued to comply with Tar- *161 ver’s instructions. As the record reveals, there were various persons who neglected to ensure this rule was properly drafted. While Manning did change the proposed rule, we do not agree that “[i]n his handling of the rules for Waddill, Mr. Manning showed that his judgment is suspect and that he cannot be relied upon to carry out instructions.” At | fibest, the record reveals that this provision was not correctly drafted because of the lack of attention it was given by various parties involved. Accordingly, we remand this appeal, while maintaining jurisdiction over it, to the State Civil Service Commission for expeditious reconsideration of Manning’s demotion in light of the facts articulated above.
Based upon the aforementioned, we pre-termit at this time addressing the Department’s answer to the appeal requesting reconsideration of terminating Manning. Costs are assessed to the Department in the amount of $1,105.00.
REMANDED WITH INSTRUCTIONS.
PARRO, J., concurs.

. Throughout the record, the terms “liquor” and "alcohol” are used interchangeably.

. Manning’s back pay was subject to a set-off for any wages earned and unemployment benefits received since his dismissal.

. Before proposed rules can be adopted, a Notice of Intent must be published in the Louisiana Register to announce them and invite public comment.